WILLIAM J. BRYSON *vs.* WILLIAM S. RAYNER.

BAILMENTS: PLEDGE, PLEDGOR AND PLEDGEE: SALES OF HYPOTHECATED STOCK.—Where the pledgor of hypothecated stock, in writing signed by him, expressly authorizes the pledgee to sell the pledge in case it is not redeemed by a day specified, or to give the same "to any broker to sell on that day," and the pledge is not redeemed on the day specified, a sale made by a broker thereafter, at private sale, for the full market price of the stock at that date, is in conformity with the authority and valid.

But where there is no such special authority given the pledgee to sell the

hypothecated stock on failure to redeem, and the pledgee, upon default, causes the same to be offered at the board of brokers and becomes the purchaser thereof, and continues to hold it, he will be regarded as still maintaining the character of bailee and holding the pledge to secure the payment of the loan, with interest, and will be required to account for all dividends on the stock in the meantime received by him.

——: ——: JURISDICTION IN EQUITY.—Although a pledge is not technically a mortgage, the subject of it not having been assigned or transferred by an instrument known to the law as such, with a condition of defeasance, yet, where it is given as a security for debt, it partakes of the nature of a mortgage, and is subject to many of its incidents, and there can be no good reason why equity should withhold its aid from the pledgor, seeking a return of the pledge in a case where the law cannot afford the relief sought.

In a case like the present, a pledge of the stock of an incorporated company, where the shares have been transferred upon the books of the corporation, and stand in the name of the pledgee, as legal owner, the law falls short of the remedy asked, and to which the pledgor is entitled, and equity alone can afford relief.

If a *pawnee* has two remedies, to sell at law after default and notice, or to foreclose in equity, no reason exists why a *pledgor* should not be furnished with the equitable remedy to redeem.

Where the bill of complaint of the pledgor also prays for an account of receipts and dividends, although the law could afford a remedy by *assumpsit* if a recovery of the receipts and dividends were sought alone, equity has also jurisdiction, and more particularly where the relief could not have been effected at law but by a multiplicity of suits.

APPEAL from the Superior Court of Baltimore city, in Equity:

The bill in this case was filed on the 24th of December, 1863, by the appellant against the appellee. The object of the bill was to compel the appellee to return to the appellant nineteen shares of the stock of the Powhatan Steamboat Company, transferred to him as collateral security for the repayment of a loan. The facts of the case sufficiently appear in the opinion of this Court. The Court below (MARTIN, J.,) dismissed the bill of complaint on the ground that the case presented no fact authorizing the interposition of a Court of Equity; from that decree this appeal was taken.

The cause was argued before Bowie, C. J., and Bartol and Weisel, J.

*George H. Williams,* for the appellant, contended:

That the appellant, as mortgagee, has a clear right to redeem, and to an account, unless he has been foreclosed in some mode recognized by law, and that these shares were mortgaged, not pledged. *Ryal vs. Roberts,* 3 *Barnard,* 38. *Huntingdon vs. Mather,* 2 *Barbour, S. C., (N. Y.,)* 542. *Story on Bailments, sec.* 287. That a bill to redeem will lie. *Patchen vs. Pierce,* 12 *Wend.,* 61. *Charles vs. Stevens,* 3 *Denio R.,* 33. 2 *Story Eq.,* secs. 1032, 1008. 2 *Kent Com.,* 582, 583. *Hart vs. Ten Eyck,* 2 *Johns. Ch. Rep.,* 100.

That though a decree for sale for foreclosure is not necessary, yet the stock must be sold upon due notice to the mortgagor of the time and place of sale, and at public auction after advertisement in the public newspapers, to give the debtor a chance to be present to see if the sale be fairly conducted. 4 *Kent's Com.,* 139, *sec.* 58. 2 *Kent's Com.,* 583, *sec.* 40. 16 *New York Rep.,* (2 *Smith,*) 399, 400.

A sale at a brokers' board will not suffice. *Castello vs. City Bank,* 1 *N. Y. Legal Observer,* 25. See this case in 4th *Abbott's N. Y. Digest,* 553, 554. *Brown vs. Ward,* 3 *Duer's Rep.,* 663. *Rankin vs. McCullough,* 12 *Barbour,* 107.— *Story on Bail.,* 286, 287. *Story's Eq. Jur.,* 1031, 1032.

That the sale of the nine shares, and the attempt to sell the ten shares by private sale and private arrangement are illegal; that as to the ten shares yet held by Rayner, the decree must be for their restoration and for an account of the dividends; and that as to the nine shares, the decree must be for the return of nine other shares if it can be proved before the auditor that he has them, or full compensation for their value on proof, with a like account for dividends. *Torry vs. Bank of Orleans,* 9 *Paige,* 649, 653.

Even if this was a pledge, yet the remedy is in equity to redeem and for an account of dividends. *Hasbrouck vs. Vandervoort,* 4 *Sandford N. Y. Rep.,* 78.

That as equity will enforce a contract to mortgage personal property, so ought it to entertain a bill to redeem it when mortgaged. *Trieber vs. Burgess,* 11 *Md. Rep.,* 464.

*Benjamin F. Horwitz,* for the appellee, contended:

1st. That if the complainant was entitled to relief, then he has an ample remedy at law, and there is no jurisdiction in a Court of Equity to grant him relief.

The deposit of the stock in this case was a pledge, and not a mortgage. The pledgee had the possession of the pledge, with a special property. He had a right to detain it as a security for his debt, but the general ownership remained with the pledgor. The pledgee had no right to sell until he had first demanded payment of the pledgor, who could redeem, at any time before sale, on tender of the amount due. In the case of a mortgage of a chattel, the entire title passes to the mortgagee, and the interest of the mortgagee becomes absolute, if the property mortgaged be not redeemed at a fixed time; which, however, may be defeated in a Court of Equity. *Story on Bailments,* secs. 286, 287. *Story's Eq. Jur.,* secs. 1030, 1031, 1032. *Cortelyou vs. Lansing, Adm.,* 2 *Caines' Cases in Error,* 202. *Jones vs. Smith,* 2 *Vesey, Jr.,* 378. *Wilson vs. Little, et al.,* 2 *Comstock,* 443.

In such a case the remedy is at law, either by an action of *trover* or *assumpsit,* usually the former; the pledgee, after tender and refusal, being treated as a wrong-doer, and as having converted the property. *Story on Bailments,* secs. 339, 341. *Story's Eq. Jur.,* sec. 1032. *Cortelyou vs. Lansing, Admr.,* 2 *Caines' Cases in Error,* 211. *Jarvis vs. Rogers,* 15 *Mass.,* 389. *Stearns vs. Marsh,* 4 *Denio,* 227. *Sedgwick on Measure of Damages,* 365. *Clark vs. Gilbert,* 5 *Bing. N. S.,* 356. *Thomas vs. Waterman,* 7 *Metf., (Mass.,)* 230.

Bryson *vs.* Rayner.

The aid of a Court of Equity may be invoked by a pledgor, in certain special cases, that is, provided there is a discovery required and demanded as essential and necessary for the complainant's case, or where there are mutual conflicting or complicated accounts, which are too large or too complicated to be adjusted in a Court of Law, but in those cases the jurisdiction is entertained solely on the ground either of "discovery" or "account," two separate and well recognized grounds of equity jurisdiction. The necessity, however, must be apparent and real, and not used as a subterfuge in order to change the proper and recognized jurisdiction. Equity sometimes entertains jurisdiction in cases where the thing pledged has been assigned by the pledgor, but even then, only where a "discovery" is necessary and required, as in case the assignee cannot find out the sum due in order to make a tender.

As to the rule which entitles a Court of Equity to interfere in cases where an account is asked for, see, *Frietas vs. Dos Santos,* 1 *Y. & J.,* 574. *King vs. Rosset, et al.,* 2 *Y. & J.,* 33. *Dinwiddie vs. Bailey,* 6 *Vesey, Jr.,* 372. *Oliver vs. Palmer,* 11 *G. & J.,* 442, 443. *Lawson, et al. vs. Davis,* 7 *Gill,* 345. *Story's Eq. Jur.,* secs. 458, 506. As to the rule in cases of assignment, see, *Kemp vs. Westbrook,* 1 *Vesey, Sr.,* 278. *Adair vs. Winchester,* 7 *G. & J.,* 114.

In this case, however, there was no assignment, and there is no discovery required or asked for, consequently no good reason can be assigned for resorting to a Court of Equity. The remedy is ample and complete at law, " a Court of Law," in the language of Chancellor KENT, ( 2 *Caines' Cases,* 211,) "having complete jurisdiction over the subject;" and it is submitted, the learned judge below was correct in dismissing the bill for want of jurisdiction, which he did after full argument, and after a deliberate examination of the question.

2d. The sale of the nine shares of stock was made *bona fide,* after full notice to the pledgor, and it was a sale made

at the time, and in the mode chosen by himself, in the paper marked " defendant's exhibit No. 12," and it is, therefore, unimpeachable, even if that question were before this Court on the complainant's bill, which, it is submitted, is not the case.

The evidence shows that the complainant knew of both the sales at the times they were respectively made, and he proves them by his own witnesses, Wheedon and Scott, and yet does not ask to have them set aside, or refer to them in his bill in any way. On such a bill no such relief could be granted, and the Court can only decree according to the allegations contained in the bill and the prayer for relief. The prayer for general relief does not cover such a case. *Legal vs. Miller,* 2 *Vesey, Sr.,* 299. *Lord Walpole vs. Lord Orford,* 3 *Vesey, Jr.,* 413 & 416. *Scudder vs. Young,* 25 *Me.,* 153. *Hobson vs. McArthur,* 16 *Peters,* 182. *Smith vs. Smith,* 4 *Johns. Ch. R.,* 281. *Story's Eq. Pl.,* sec. 42.

3d. No decree could, under any circumstances, pass in this case in reference to the nine shares, as Mr. Wheedon, the owner thereof, and the party who has received the dividends thereon, which was known to and proved by the complainant himself, is not made a party to this suit. *Buchanan vs. Torrence,* 11 *G. & J.,* 342. *Cromwell vs. Owings,* 6 *H. & J.,* 10.

4th. The sale of the ten shares of stock was made at the very highest and best market price, after due notice, as contained in defendant's exhibit No. 7, and after every effort to sell on the part of the stock brokers, which mode of sale, to wit: by broker, was indicated by the complainant, as shown by defendant's exhibit No. 12, to be the one preferred and chosen by himself; the broker was, therefore, the party making the sale; he occupied the same relation towards the parties as a trustee appointed by a Court of Equity, and the pledgee had a right to purchase the stock from him, the

pledgor's chosen agent of sale. But if it be looked upon as a sale made by Rayner himself, yet if it be further considered that under the circumstances of the case, he was obliged unwillingly to purchase the stock in order to save himself, which the complainant's own witnesses show to be the fact, then such a sale, if it were not supported and upheld by a Court, would be voidable only and not void absolutely, and could not be so treated by the complainant, who is shown to have had notice of it, and who, therefore, would be obliged to ask in his bill to have it set aside as preliminary to any relief he might seek. *Williams' Exrs. vs. Marshall*, 4 *G. & J.*, 376. *Richards vs. Jones*, 3 *G. & J.*, 163. 1 *Code*, 446, *secs.* 12 & 13. *Jackson vs. Walsh*, 14 *Johns.*, 407. *Harrington vs. Brown*, 5 *Pick.*, 521.

5th. The enhancement in the value of the stock since the sales is no ground for setting them aside, and can only be looked at as furnishing evidence of bad faith on the part of the complainant. *Davis vs. Simpson*, 5 *H. & J.*, 149. *Tyson vs. Mickle*, 2 *Gill*, 376.

6th. That if the complainant had any remedy, it has been lost by reason of his being of full age, under no disability, and with a full knowledge of the transactions lying by for years, and acquiescing in the sales. *Davis vs. Simpson*, 5 *H. & J.*, 149. *Williams vs. Marshall*, 4 *G. & J.*, 376. *Story's Eq. Jur.*, sec. 1032.

WEISEL, J., delivered the opinion of this Court.

In the cases of the President and Directors of the Maryland Fire Insurance Company and the Baltimore Marine Insurance Company against William F. Dalrymple, decided at the present term, this Court fully considered the duties and responsibilities of the pledgee of stocks taken and held as collateral securities for loans made to the pledgor. In those cases we decided that a sale of such stock at the public stock

board, no fraud appearing in the transaction, was a valid public sale in Maryland; that if the pledgee purchased at such sale, and afterwards continued to hold the stock, he was to be regarded as still standing in the relation of bailee, and responsible for all the duties and liabilities incident to it, or, in other words, the bailment was not, by that act alone, broken up and destroyed.

In the cause now under consideration there were two loans to the appellant by the appellee, in February and April, 1861; one of $1000 upon a pledge of ten shares of the Powhatan Steamboat Company; the other, of $945 on a pledge of nine other shares of stock of the same company. Loan papers were executed in the usual form, and the borrower failing to comply with the terms, the appellee applied for payment. With regard to the nine shares and the loan which they were given to secure, Mr. Bryson, in writing signed by him, expressly authorized the appellee to sell them in case they were not redeemed by a certain day named in the authority, and if not redeemed on that day, he was "authorized to give the stock to any broker to sell on said day." The money not being paid on the day specified, the appellee afterwards handed the stock to a broker to make sale of the same. The broker effected this at private sale and for the full price that the stock then commanded in the Baltimore market. The nett proceeds, however, failed to pay the debt by $51.43, of which, with a statement of sale, the appellant was duly notified.

The only question which can arise as to this particular transaction is, whether the written authority to sell authorized the pledgee to sell at private sale or any way, by a broker, the nine shares. In the absence of this special authority, according to the rulings of this Court in the cases referred to, it would have been the duty of the pledgee to have disposed of the stock at public sale, after a reasonable notice to

the public of the time and place of sale, or at the public stock board.   We think the paper referred to was intended to enlarge the power, and to enable the pledgee to sell at private sale and without notice; otherwise, it would have been un- necessary, as the power to sell at public sale existed without it, and a prompt sale by the broker on the day he received it for the purpose would not admit of notice.   We construe it as a general authority to sell by a broker at private sale or in any other way, and are of opinion that the sale made by the broker of the nine shares as proved by him was in con- formity with its terms and valid.   This disposes of so much of the case as relates to those shares, and as to them the relief sought was properly denied.

. The other lot of ten shares was offered at the brokers' board and purchased in for the appellee, Rayner, who, according to the proof of Mr. Clagett, the clerk of the Powhatan Steam- boat Company, still holds them.   Mr. Rayner asserts that by the sale he became the owner of them, and that he is entitled to all dividends since, and not liable to account for the same. This assertion of right and claim is at variance with what we have decided in the cases against *Dalrymple* already referred to, and we regard him as still maintaining, as to these ten shares, the character of a bailee.   They must be considered still as collaterals in his hands to secure the payment of the thousand dollar loan and all interest upon it, all moneys and dividends received upon them by Rayner, whilst in his hands, to be properly accounted for by him.

But he contends, through his counsel, that if the appellant is aggrieved his remedy was ample at law, and that equity can afford him no relief.   This position is based upon the technical distinction between a *mortgage* and a *pledge*, it be- ing conceded that if the stock had been mortgaged the right to rec'eem in equity would be indisputable, but as the rela- tion between bailor and bailee is a legal relation, and only a

qualified property passed to the bailee by the transfer of the stock to him, the remedy for any violation of the contract or tortious dealing with the property is, at law, by an action of trover or *assumpsit;* and the learned judge below, adopting this view, and considering that there was nothing in the case that could properly work a change of the jurisdiction, dismissed the bill of the complainant on this ground. In this, we think, he committed an error, and that the complainant was entitled to the relief he sought as to the ten shares of stock.

Although a pledge is not technically a mortgage, the subject of it not having been assigned or transferred by an instrument known to the law as such, with a condition of defeasance, yet it is given in certain cases, as in this, as a security for debt, and, therefore, partakes of the nature of a mortgage. It is also subject to redemption. The pledgor, on payment of the debt or tender, is entitled to a return of the identical property pledged, and there can be no good reason why equity should withhold its aid for this purpose in a case in which the law cannot accomplish it. Where the article pledged is a specific chattel, the law can afford an ample remedy by replevin if the pledgee retains the possession, or by trover or *assumpsit* in case he has parted from it. But in a case like the present, that of stock of an incorporated company, when the shares have been transferred upon the books of the corporation and stand in the name of the pledgee as legal owner, the law falls short of the remedy asked and to which the pledgor is entitled. Equity alone, in such a case, can afford relief by an order of re-transfer. If a pawnee has two remedies, to sell at law after failure and notice, or to foreclose in equity, ( 2 *Kent's Com.*, 582, 583,) no reason exists why the pledgor should not be furnished with the equitable remedy to redeem.

The bill in this case also prayed for an account of receipts

and dividends, and although the law could afford a remedy by *assumpsit* if a recovery of the receipts and dividends were sought alone, equity has also jurisdiction, and more particularly where the relief asked by the bill could not have been effected at law but by a multiplicity of suits. *Story's Eq. Jur.*, secs. 442, 457. The cases of *Ryal vs. Roberts, Barnard*, 38, *Hart vs. Ten Eyck*, 2 *Johns. Ch. R.*, 100, and cases there referred to. *Hasbrouck vs. Vandervoort*, 4 *Sand.*, 78, are fully to the point, whilst that of *Wilson vs. Little*, 2 *Comst.*, 448, does not conflict with the law as applicable to this case.

The appellant is, in our opinion, entitled to the relief he asks as to the ten shares of stock. We will reverse the decree of the Court below with costs to the appellant, and remand the cause for further proceedings accordingly.

> *Decree reversed with costs to appellant,*
> *and cause remanded.*

(Decided July 14th, 1866.)